UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TRUSTEES FOR THE IBEW, LOCAL            )
NO. 1, HEALTH & WELFARE FUND et al.,    )
                                        )
                                        )
                                        )
       Plaintiffs,                      )          Case No. 4:20-CV-00218 JCH
                                        )
   v.                                   )
                                        )
RESOURCE ELECTRICAL SYSTEMS,            )
INC., et al.,                           )
                                        )
       Defendants.                      )

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Default Judgment, Doc. [16], pursuant to Fed. R. Civ. P. 55(b)(2), and to compel Defendants to submit to an audit.  Because Plaintiffs seek an audit to determine additional amounts due, the Court will construe the motion as one for partial default judgment—because Plaintiffs' motion does not seek a judgment that adjudicates all the rights and liabilities of all parties, it actually seeks an interlocutory judgment, not a final judgment.[1]  Plaintiffs filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 et seq. and the Labor Management Act ("LMRA"), as amended, 29 U.S.C. § 185.  For the reasons set forth below, Plaintiffs' motion, construed as one for partial default, will be granted, and Defendants will be ordered to submit to the requested audit.

I.     **Factual and Procedural Background**

Plaintiffs are (i) the trustees of the IBEW, Local No. 1, Health and Welfare Fund; the Local No. 1, IBEW, Pension Benefit Trust Fund; the IBEW Vacation Fund; the IBEW, Local No. 1 Apprenticeship and Training Fund; IBEW-NECA Holiday Trust Fund; the Electricians'

---

[1]  Federal Rule of Civil Procedure 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

Income Security Fund; the Electricians' Salary Deferral Plan; and the National Electrical Benefit Fund ("NEBF"), all multi-employer plans in an industry affecting commerce within the meaning of the ERISA; and (ii) directors of the NECA-IBEW Market Research, Development and Public Relations Fund and the NECA Administrative Maintenance Fund and Substance Abuse Program, which are funds not covered by ERISA but are third-party beneficiaries of the Labor Agreements between Local 1 International Brotherhood of Electrical Workers, AFL-CIO (Local 1) and Defendant Resource Electrical Systems, Inc. (collectively, "Plaintiffs" or the "Funds"). Plaintiffs bring this action against Defendant Resource Electrical Systems, Inc. and Defendant Sherman McCoy d/b/a Resource Electrical Systems, Inc. ("Defendants") under Section 301 of LMRA and Section 502(g)(2) of ERISA to enforce the terms of the Labor Agreement between the St. Louis Chapter National Electrical Contractors Association and Local 1, ("Labor Agreement") and the associated Trust Agreements and Trust Plans incorporated by reference into the Labor Agreement and by which Defendants have been bound at all relevant times.

Defendant Resource Electrical Systems, Inc., is a Nevada corporation, which had, at all relevant times, a principal place of business in Bridgeton, Missouri.  Defendants were employers of covered employees under the meaning of ERISA.  Resource Electrical Systems, Inc.'s corporate registration in Missouri was administratively dissolved by the Secretary of State of Missouri in 2016.  Plaintiffs allege that, because Defendant Sherman McCoy continued to conduct business on behalf of Resource Electrical Systems, Inc., after its administrative dissolution, he is personally liable for all obligations of Defendant Resource Electrical Systems, Inc.  Plaintiffs allege that Defendants failed to make timely contributions to the Funds as required under the terms of the Labor Agreements and related Trust documents.

More specifically, Plaintiffs allege that at various times from July 2017 through the filing of the complaint in this matter, Defendants did not timely or fully pay the contributions due as required by the Labor Agreements.  Defendants filed reports for the months of July 2017 through September 2019, but failed to pay the corresponding employee benefit contributions.  Plaintiffs further allege that beginning in October 2019, Defendants failed to file reports and pay contributions due under the Labor Agreements.  Additionally, Plaintiffs assert that in September 2019, the Funds initiated an independent payroll examination of Defendants for the period from March 1, 2016, through December 31, 2019, to determine the accuracy of the hours and wages reported by Defendants and to ascertain whether there were unreported hours and wages on

which contributions were due, but Defendants refused to produce documents necessary to complete the audit.

Plaintiffs further allege that Defendants and the Funds, on August 18, 2016, entered into a payment agreement ("Payment Agreement") for the amount owed in unpaid contributions for the months of November 2011, and January 2012, through February 2016, plus interest, liquidated damages, costs, and attorneys' fees on the same.  Pursuant to the Payment Agreement, Defendants admitted owing $539.99 in unpaid contributions for November 2011, $427.28 in interest and liquidated damages on those contributions, and $118,244.14 in unpaid contributions for January 2012 through February 2016, plus $88,970.21 in interest and liquidated damages on those contributions.  Defendants agreed to pay the $118,244.14 amount in unpaid contributions in monthly installments of $2000.00, beginning in September 2016.  Pursuant to the Payment Agreement, the amount collected as interest and liquidated damages would depend on how quickly Defendants repaid the unpaid contributions.  Defendants also agreed that Plaintiffs could collect the full amount of contributions, interest, and liquidated damages owed to the Funds if Defendants failed to make the monthly installments or to keep current with monthly contributions as they came due under the Labor Agreement and related Trust documents. Additionally, Defendant Sherman McCoy personally guaranteed the amounts due under the Payment Agreement.  Following execution of the Payment Agreement, Defendants failed to pay monthly installments from July 2017 through the filing of the instant motion, and further failed to keep current with contributions under the Labor Agreement.  Plaintiffs seek to collect unpaid employee contributions owed by Defendants, the remaining balance on the Payment Agreement, and to force an accounting and audit to determine the exact amount owed to the Funds.

Since being served with the Summons and Complaint in this matter Defendants have not filed an Answer or otherwise contested the Complaint.  Clerk's Entry of Default was entered against Defendant Sherman McCoy (Doc. [10]) and against Defendant Electrical Systems, Inc. (Doc. [15]), and Plaintiffs subsequently filed the instant Motion for Default Judgment. Defendant has not responded to the entry of default or to the Motion for Default Judgment.

## II.    Legal Standard

The entry of default by the Clerk of Court pursuant to Fed. R. Civ. P. 55(a) is a prerequisite to the grant of a default judgment under Rule 55(b), but whether to grant default judgment is a separate question within the discretion of the Court.  *Weitz Co., LLC v. MacKenzie*

*House, LLC*, 665 F.3d 970, 977 (8th Cir. 2012).  Pursuant to Fed. R. Civ. P. 55, default judgment is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  After default has been entered, "the allegations of the complaint, except as to the amount of damages are taken as true."  *Greater St. Louis Const. Laborers Welfare Fund v. AbatePro, Inc*., 4:17CV02812 AGF, 2018 WL 5849980 at *1 (E.D. Mo. Sept. 6, 2018) (quotation omitted); *see also Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010).  Before the Court may enter a default judgment setting forth the declaration Plaintiff seeks, it must be satisfied, on the basis of the sufficiency of the Complaint and the substantive merits of Plaintiffs' claim, that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (internal quotation omitted).

The liability of a defendant is established upon entry of default, and thus, once default is entered, the plaintiff is not required to establish its right to recover.  *Brown v. Kenron Aluminum & Glass Corp*., 477 F.2d 526, 531 (8th Cir. 1973) (upon establishment of default, "the defendant has no further standing to contest the merits of plaintiff's right to recover"); *see also Trustees of the IBEW Local 405 Health & Welfare Fund v. Tichy Elec. Co*., 2008 WL 154641, at *4-5 (N.D. Iowa Jan. 15, 2008 (applying the above principle to a case for delinquent contributions under ERISA and the LMRA).  The only remaining issue before a Court upon default, then, is the amount of damages.

"The court  may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2).  However, "the district court need not hold an evidentiary hearing on the issue of damages." *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944); *see also* 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 (3d ed. 2012) ("If defendant does not contest the amount prayed for in the complaint and the claim is for a sum certain that can be made certain by computation, the judgment generally will be entered for that amount without further hearing.").

The Court may rely on affidavits and documentary evidence to determine the appropriate sum for the default judgment.  *Painters Dist. Council 2 v. Grau Contracting, Inc*., No. 4:10CV02339 AGF, 2012 WL 2848708 at *1 (E.D. Mo. July 11, 2012).  With respect to damages in an action for delinquent fringe benefits, pursuant to 29 U.S.C. § 1132(g)(2), a

plaintiff is entitled to recover all of the principal contributions owed, plus interest, liquidated damages (or the value of the interest again, where that amount is greater than the liquidated damages, or where liquidated damages have not been provided for), attorneys' fees, and costs. *Id.* § 1132(g)(2).  The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies.  *See Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 479 n.4 (8th Cir. 1988). Unpaid contributions, interest, and liquidated damages are "considered sums certain because their calculations are mandated under § 1132(g)(2) of ERISA and by party agreements." *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. LTP Generations*, No. 17-cv-0942 (KBJ), 2019 WL 1423686, at *6 (D.D.C. Mar. 29, 2019) (internal quotation omitted).

III.    **Discussion**

At all times material to this action, Defendants were party to and bound by the terms of the Labor Agreement and the Trust Agreements incorporated therein, which requires Defendants to make contributions to the Funds for each hour worked by covered employees.  Pursuant to ERISA § 1132(g)(2), and the terms of the Labor Agreement, Plaintiffs are entitled to recover all of the principal contributions owed, plus interest, liquidated damages (or the value of the interest again, where that amount is greater than the liquidated damages, or where liquidated damages have not been provided for), attorneys' fees, and costs.  Here, Plaintiff alleges that Defendants owe interest and liquidated damages on the untimely contributions for July 2017 through September 2019, with an interest rate of 1/30th of two percent of the contributions due for each date the contributions are late plus variable liquidated damages (which vary depending on how often an employer fails to make timely contributions) on all Funds except for the NEBF.  The NEBF has an interest rate of 10% compounded monthly and liquidated damages at a rate of 20% of total delinquent contributions.

Plaintiffs submit the affidavit of Michael Trokey, the Associate Administrative Manager of the IBEW-NECA Service Center, who is responsible for calculating delinquent amounts owed to all the Funds except NEBF, and who attests to the validity of the Labor Agreement and related Trust Agreements and Plans and the Payment Agreement.  *See* Doc. [17-2].  Mr. Trokey attests that Defendants owe the Funds (excluding NEBF) $248,093.53 in unpaid contributions for hours worked for the period of July 2017 through September 2019, plus interest and liquidated damages on the same.  He further attests that Defendants still owe $188,271.62, plus interest and

liquidated damages on the Payment Agreement.  Plaintiffs also submit the affidavit of Brian Killian, the Audit and Delinquency Manager for the NEBF, who is responsible for calculating delinquent amounts owed to that Funds.  *See* Doc. [17-1].  Mr. Killian attests that Defendants owe the NEBF $13,979.08 in unpaid contributions for hours worked for the period of July 2017 through September 2019, plus interest and liquidated damages on the same.  Mr. Killian further attests that Defendants still owe to NEBF $5,630.32 in interest and $1,316.53 in liquidated damages on the Payment Agreement.

Based on review of the record, the Court concludes that Plaintiffs have provided appropriate documentation and affidavits in support of awards for the delinquent contributions, and associated interest and liquidated damages on the contributions due to Plaintiff Funds as described in the affidavits, as well as the unpaid balance of the Payment Agreement.  Plaintiffs have established that Defendant is liable to them for $262,072.61 in unpaid contributions. Pursuant to ERISA § 1132(g)(2) and the terms of the Labor Agreement, Plaintiffs are also entitled to ten percent interest on the unpaid contributions in the amount of $82,408.24, and another $15,200.50 of liquidated damages, on that amount.  Plaintiffs have further established that Defendants owe an additional $188,271.62 for the outstanding balance on the Payment Agreement, plus interest of $5,630.32 and liquidated damages in the amount of $1,316.53.

Pursuant to Section 1132(g)(2)(D), the Court may also award costs and "reasonable" attorneys' fees.  Plaintiffs submit the affidavit of attorney Amanda K. Hansen.  Doc. [17-3]. According to Ms. Hansen, a total of 36.3 hours was expended in connection with this matter, for a total of $6,126.40 for legal services.  Ms. Hansen and another attorney at her law firm, Rhona S. Lyons, were the only attorneys who worked on the case, with hourly billing rates that ranged from $182.00 to $192.00 per hour.  Additionally, a paralegal, Terri Norath, also worked on the case, and charged an hourly rate of $110.00.  These fees are commensurate with fees previously awarded by this Court in similar cases.  *See, e.g., Greater St. Louis Const. Laborers Welfare Fund v. LaBarge*, No. 4:13CV01258 AGF, 2013 WL 6181808 at *2 (E.D. Mo. Nov. 26, 2013) (effective hourly rate of $170 in default judgment action).  Accordingly, the Court finds that the hourly rate and hours expended are reasonable, and Plaintiffs are therefore entitled to $6,126.40 in attorney's fees.  In addition, the firm paid $571.00 in costs related to this action, including for the filing fee and expenses related to service of process.  Plaintiffs' costs of $571.00 are reasonable and customary, and will be awarded as well.

6

Plaintiffs also request an order compelling Defendants to submit to an audit for the period from March 1, 2016, through December 31, 2019, during which time Defendants submitted some but not all contribution reports, and did not pay all contributions due. Plaintiffs seek an audit of this period to ascertain whether there were unreported hours and wages on which contributions were due. Plaintiffs are entitled to collect contributions for covered employees who worked during the period covered by the Labor Agreement and related Trust documents, and are additionally entitled to injunctive relief in the form of an audit to determine the full amounts due. *See, e.g., Carpenters' Distr. Council of Greater St. Louis & Vicinity v. Vehlewald Constr. Co.*, 2008 WL 544977 (E.D. Mo. Feb. 25, 2008) (an audit constitutes an appropriate element of relief in an ERISA case where the full amount of contributions may not be known due to the failure of a defendant to submit records).

## IV.    Conclusion

Upon review of the record, the Court finds that Plaintiffs have provided sufficient evidence to support their motion.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment, construed as one for Partial Default Judgment, Doc. [16], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants shall pay Plaintiffs $262,072.56 in contributions, plus interest on such contributions in the amount of $82,408.24 and liquidated damages in the amount of $15,200.50.

**IT IS FURTHER ORDERED** that Defendants shall pay Plaintiffs $188,271.62 for the outstanding balance on the Payment Agreement, plus interest of $5,630.32 and liquidated damages in the amount of $1,316.53.

**IT IS FURTHER ORDERED** that Defendants shall pay Plaintiffs $6,126.40 in attorney's fees, plus costs of $571.00.

**IT IS FURTHER ORDERED** that Defendants shall have up to and including **January 20, 2021**, to submit its books, payroll registers, and other documents as needed to perform an audit and accounting for the period of March 1, 2016, through December 31, 2019.

**IT IS FINALLY ORDERED** that, not later than **April 20, 2021**, Plaintiffs shall submit a motion for final entry of judgment, setting forth the total amount due for delinquent contributions,

liquidated damages, and interest, supported by all necessary affidavits and documents. The Court will defer entry of a final judgment in this matter until that time.

Dated this 15th day of December, 2020.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE
JEAN C. HAMILTON